IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:07cr222-MHT |
| **ANTONIO D. McDADE** | ) | (WO) |

## OPINION

Defendant Antonio D. McDade pled guilty to one count of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a). He is now before the court for sentencing.

Having examined the presentence report prepared by the United States Probation Office and having considered and addressed each party's objections to that report, the court finds that the offense level is 38, the criminal history category is III, and the United States Sentencing Guideline is 292 to 360 months. In this case, however, the court also finds that McDade's history and characteristics justify a downward variance from the

advisory guideline range.  See United States v. Booker, 543 U.S. 220 (2005); 18 U.S.C. § 3553(a)(1).

It is clear that McDade is at least mildly mentally retarded.  The evidence supporting this conclusion--including multiple I.Q. tests, educational records, and the testimony of McDade's expert, Dr. Thomas J. Boll--is simply overwhelming.  His deficiencies must be taken into account in crafting a proper sentence.

Almost eight years ago, in Atkins v. Virginia, 536 U.S. 304, 318 (2002), the United States Supreme Court recognized that, "Mentally retarded persons ... have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others."  The Court further explained that, while "[t]here is no evidence that [such persons] are more likely to engage in criminal conduct than others, ... there is abundant evidence that they often act on

impulse rather than pursuant to a premeditated plan, and that in group settings they are followers rather than leaders." Id. The Court thus concluded that: "Their deficiencies do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability." Id.

According to Dr. Boll, the Atkins court's general observations about mentally retarded persons apply to McDade. Dr. Boll testified, for example, that he has a history of failing to control his impulses. He also reported that McDade "is not a gentleman who can chart his own course or easily resist or rise above his social milieu." Def.'s Ex. 1 at 5. In short, he "is a follower." Id.

Dr. Boll's findings are particularly significant given the facts presented to the court, especially the series of disturbing videos that were shown yesterday. It is noteworthy that in each of those videos McDade appears with <u>at least</u> one other male and in two of the

videos--including the video that constitutes the instant offense--there is a crowd of men. In other words, this was group behavior. It was exactly the sort of behavior that people like McDade have trouble resisting.

To be clear, McDade's cognitive disabilities do <u>not</u> excuse his behavior. He did a very bad thing--indeed he has a history of doing very bad things--and he deserves to be punished. And despite the arguments of defense counsel, it is clear that he did <u>much</u> more than simply hold a camera.* However, his culpability is diminished by his disabilities and this justifies a departure from the advisory sentencing guidelines.

A sentence of 240 months (20 years) is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). It is also

---

\* The defense argues that "Sentencing McDade to 360 months for holding a video camera while the two men who sexually assaulted [T.P.] escape any consequences for their actions in this Court would send the wrong message." Def's Br. at 12 (Doc. No. 203).

4

sufficient to "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant." § 3553(a)(2)(B)-(C).

Perhaps most important in this case, this sentence provides an opportunity to "provide [McDade] with needed educational [and] vocational training ... [and] other correctional treatment in [an] effective manner." § 3553(a)(2)(D). Thus, during his incarceration, McDade should participate in basic-adult-education classes and vocational-skills training. He has never successfully held down a job, and this is at least partly due to the fact that he left school without the skills he needed to fully and appropriately participate in society. He should also participate in sex-offender treatment and, if available, relationship counseling. It is clear that he has never learned how to interact properly with women. The videos shown to the court prove this. It is also demonstrated by the fact that he, although never married, has fathered three children with three different women.

The evidence presented to the court also shows that McDade comes from an environment saturated with drugs and alcohol.  Thus, he should participate in substance-abuse counseling and treatment while incarcerated.

While McDade's disabilities support a reduced sentence, they also indicate a need for continued support and supervision after he is released from prison.  Given the seriousness of both his offense and his disabilities, a life term of supervised release is appropriate.  Dr. Boll testified that McDade functions best in a structured environment, and conditions of supervised release can help to provide this.  If possible (and as recommended by defense counsel), he should be placed in a structured group-living environment upon release from prison.  He should participate in continued mental-health treatment (including sex-offender treatment) and basic-skills education and vocational training (if necessary).  Moreover, probation should provide him with assistance in

locating and maintaining suitable employment.  He should also submit to drug testing.

Of course, McDade will be required to register as a sex offender and will be subject to the associated sex-offender monitoring and expanded search-and-seizure policies.

DONE, this the 23nd day of February, 2010.

    /s/ Myron H. Thompson
    **UNITED STATES DISTRICT JUDGE**